Good morning, Your Honor. May it please the Court, I am William F. Fulcher, Oregon State Bar No. 73-140, and I represent the plaintiff, Marilyn Robinson, who is a black Afro-American. This is a summary judgment granted by the Court, an appeal for the summary judgment, and therefore it's fact-specific as opposed to many of the procedural questions you heard this morning. So if I can, let me, as brief as possible, describe the facts. Ms. Robinson joined the Bonneville Power Administration Department of Energy in 1986, and she rose finally to the grade of GS-11. When she sought to go the next step to a GS-12, she was bypassed for promotion about a baker's dozen, and she filed a Title VII case in 1996. It was heard by Judge Robert E. Jones. During the course of the proceedings, Bonneville Power admitted liability for one of the positions, and the trial was basically on damages. Judge Jones ordered that she be advanced to a GS-12 position, and she was, and received back pay damages and attorneys. What year was that? 1996. Thereafter, she suffered, according to her allegations, a continual pattern and practice of unfavorable employment decisions and closed supervision, a transfer of her workstation, all of the above. But we're not here on those issues today, are we? Well, we're not. Here goes our part and parcel of the issue of whether there is a nexus in retaliation from the 1996 trial and her being bypassed for a promotion in 1999. Was there evidence about how many grade 13 positions were in existence in the Bonneville, in that office where she was working? During the 1996 case? No. Now, she's complaining. She said, I didn't get a grade 13. Yes. Because of retaliation, because I sued you once before. Yes. Now, how many grade 13s are there in that office? I can't tell you, Judge. Well, isn't that, wouldn't that be relevant in determining whether she was discriminated against? Well, actually, there were seven candidates for that job. But how many jobs, how many grade 13 people are there in that, in that department at that level? I can't tell you, Judge. I can tell you. Well, it's sort of like how many generals do you have in a division? I understand. It's not very relevant if we don't know. Well, let me describe the rest of the facts, if you would. In 1999, the position of the GS-13 position of educational coordinator was vacated by retirement. Ms. Robinson has 12 years of public school history prior to BPA, and she thought this was a job that she couldn't perform. She asked about the job, what was going to happen when the prior holder of the position retired, and her question was ignored. Thereafter, a preselected white female candidate was appointed to the position on a temporary basis, what the federal merit system calls a temp position to a detail. And the rules are that you cannot appoint anyone to such a detail for more than 120 days in the period of 52 weeks. And in this case, they appointed the preselected white candidate to the position. Dutifully, after 120 days, she was returned on the personnel record as going back to her GS-12 position. But she, in fact, performed all the duties of the position for a period of nine months. Now, this is the so-called temporary appointee. Yes. And a panel, of course, was assembled to select a candidate to permanently fill the position that she had filled temporarily for nine months. And the panel consisted of the director of communications, the BPA, and two staffers of the selecting official, a woman named Hunt. So we rounded up the usual suspects, and the panel considered seven candidates, two black males, one black female, Ms. Robinson, one white male, and three white females, one of whom claims, we believe falsely, to be an American Indian. The candidate was selected, the preselected candidate was selected, and Ms. Robinson filed her Title VII case. I've given you, Your Honors, a Rule 28J, Circuit Rule 28J6 letter for Gonzales versus the police department of San Jose. And I did that simply to argue with the issue that Gonzales holds that an affirmative action plan is a shield and a sword. If an employer adopts such a plan and follows it, it's a shield against discrimination complaints. If the employer does not follow the affirmative action plan, then it's a sword for the employee to make the claim. In this case, the record shows that during a six-month period from 10-1-01 to 3-31-02, out of nearly 5,000 applications, BPA promoted only 18 black females to GS-12 or 13 positions in the entire agency. Also, it would be more helpful to me if you could focus specifically on this particular plaintiff and the evidence that you assert created an issue of fact regarding her specific request for promotion. It's not very helpful to me to give me statistics regarding the overall employment, because I think the district court focused on this particular plaintiff and the evidence regarding her claim. Well, let me say just this, Your Honor. The fact that the employer's statistics, and they're all in the record, even the employer's provision of those statistics show that Bonneville Power Administration did not follow its affirmative action plan. That doesn't help us without knowing how many African Americans were qualified for the positions, how many applied for positions. We would need a lot more information to make those statistics meaningful, at least from my point of view. So it would be more helpful to me if you would focus on this particular plaintiff and why, in your view, there was substantial evidence of discrimination to defeat someone's judgment. Well, the first issue, Your Honor, is that we believe that there was a causal link between her 1996 Title VII case and the finding of her denial of the 1999 promotion. We believe that the violation of the Federal Merit System rules limiting temporary details to 90 days and not the nine months, or excuse me, 120 days and not the nine months that occurred in this case, results in the kind of unfavorable affirmative action statistics that I was trying to give you. What else do you have besides the fact that another employee was put into the position temporarily? I'm sorry? What other evidence are you giving us in addition to the fact that an employee was put into the position temporarily? Is there anything else you're asking us to consider that raises the question of material fact? Well, the panel itself, as I said, were made up of staffers of the selecting official, and one of the panels was aware of the 1996 case. While the panel were reviewing the applicants, they actually sought out an employment reference from one of the individuals who testified on behalf of BPA against Ms. Robinson in the 1996 case, and that individual, of course, gave a poor reference for Ms. Robinson. Is it unusual in the BPA to get references from past supervisors? Is that unusual? Would the record indicate? No. As a matter of fact, they should have done so, but they chose to go back three or four supervisors prior to her current supervisor at that time, and they went to somebody who I have said was an adverse witness for her in the 1996 case, and her current supervisor was not interviewed on her behalf, and the current supervisor, Marzetti, gave her a marvelous review, and it's contained on page 10 of 16 of plaintiff's comments reply brief. I know you're over time, but I want to ask you about you. In your letter, you mentioned that Judge Gelders considered the affirmative action plan and failed to decide or didn't decide whether the plan had been followed. Is that? Have I overly summarized your point? He said two things we disagree with, Judge. One was that there was no evidence that the affirmative action plan had been violated, despite the statistical information that was in the record. Is that the only evidence you have, that there was a violation of the plan with those numbers that you just gave us? That is correct, Your Honor. You don't have any other evidence of a BPA? The second thing he said was that there was no evidence that the BPA had actually violated merit system rules by temporarily appointing someone for 120 days and then letting them informally perform all the duties of the position for nine months. What is the effect of her, this temporary person staying in the job, sitting at the desk for another six months or so after the 120 days, but not at a grade 13 pay? She was getting her old salary, wasn't she? She got her old pay. How does that discriminate against anybody in this case? Because when the panel considered the applicants, the major factor of giving the preselected white candidate the job was she did so well for nine months in the position. So it was sort of a trial? That is correct.  Thank you, counsel. We'll give you one minute for rebuttal. Thank you, Your Honors. If it may please the court, my name is Ron Silver. I'm an assistant United States attorney, and I am representing the Secretary of Energy. There are three theories here that the plaintiff has asserted. I want to just focus primarily on the disparate treatment and on the retaliation claims. On the disparate treatment claim, what's so critical in looking at this is that the plaintiff did not put any evidence in the record to show that Ms. Hunt was motivated by racism in the actions she took, or that the three technical employees who screened actually 12 candidates and all of the three technical employees who screened the 12 candidates all ranked Ms. Robinson fourth out of 12. They all found her qualified. Counsel, what's the analytical rubric for this type of case? Doesn't there have to be a prima facie case shown, and you agree that that was met? Oh, absolutely. And then there was, in terms of the defendant, there was a legitimate reason why. What was the reason that the defendant gave after the prima facie case was met as to why the plaintiff was not selected? Our reasons are set forth in many, many, many declarations. Can you give me the short version here? Yes, absolutely. The short version is that looking at the – first of all, the short version is you had a technical group that looked at everybody's knowledge, skills, and KSAs, everybody's applications, everybody's history, and they saw that particularly with Phyllis Evans, who got picked, and with Kyra Chaffield and an African-American male, Daryl Johns, that they had much stronger, broad-based experience of relating to the community. That was based on interviews, correct? No, that was based on just the cold review of everybody's applications. This is the review done by Dulcey Mayer, John Taves, and Carol Beasley. What were the results of that evaluation? Where would that be in the record? That is in the record, Your Honor. I believe it's page 1-4 here. And so what criteria were they looking at to measure these employees against? Were they measuring the employees against the job description? Yes, against the crediting plan. And all three of those individuals set out in their declarations that are all in the supplemental excerpt of the record. These three individuals set out in their declarations the crediting plans they worked against. They looked at all the applications. Let's go to the base documents. Where is the crediting plan in the base documents? Your Honor, I'm not sure if the crediting plan made it into the supplemental excerpt of the record or not. If you look at page 140 of the supplemental excerpt of the record, that is where this panel of three, not the two that did the interview, panel three give their rankings of the individuals. And if you look, you have all the candidates. You're on page 81, you said? No, 140 of the supplemental excerpt of the record. 140. Let's see here. Okay. And if you look. What do these names mean? Bell, Chatfield, Danley? These were all the applicants. These were the applicants for the position. This was a summary score sheet prepared by the three technical reviewers. And where do we see those three technical reviewers and their specific scores to each individual? They explain them in their declarations who they are. So we don't have the source documents in here that generated this evidence? If I can speak with the. Yes or no? I don't know the answer whether we have the crediting plan in the supplemental. The difficulty that I have with this case, I'll just tell you, is that generally these are subjective. These are subjective observations that are made. And it's important for me to look at the base documents and what was being compared. Because the assertion is made by Plaintiff in this case that this position involved an education coordinator. And she had a master's degree in education. I don't think she had a master's, Your Honor. Well, she had a BS degree. Yes, she did. I'm sorry. In education. And at least the assertion is that none of the other candidates did. So it would be important for me to know what were the criteria that were being evaluated by these individuals. And if it's true that this was an education-driven position and she was the only one with a BS degree in education, I would be suspicious of a low rating of her on objective criteria if that's the objective criteria set forth in the job description or however it is you categorize the experience requirement or the education requirement. If I may, Your Honor, I would like to refer you to the excerpt of record starting at the supplemental excerpt of record at 141 shows the application of the successful candidate, Phillips-Evans. At 160 of the supplemental excerpt of record, we have the application of Mr. Robinson. But that doesn't help us unless we know what it's compared against. And I have been told that the crediting plan itself is not in the record. But the job announcement is in the record, Your Honor, and we need to know what these people who were rating her rated her against. If they rated her against the crediting plan as opposed to the job announcement, it doesn't help us to look at the ratings because we don't know whether they jive. Your Honor, I appreciate the frustration that you've expressed and what's not here for you. I will say that, but I don't want to lose sight of the fact that this is a case where the plaintiff has the burden. We have come forward to show that, and please do not, you know, I think that the plaintiff has tried to give the impression that she was sort of just blown off here as a candidate. She ended up ranking fourth out of 12 candidates. I understand that. It would have been better to be first. She would have loved to have been first. And what's important to note, too, is that there was distinctions between, you know, not everybody, not all of the three ranked Ms. Evans first. One of the people ranked Kyra Chaffee first. All of them talked about Daryl Johns being a strong candidate. And then if you go and you look at the declarations of Joan McNamara and Karen Hunt, you see where Mr. Johns pretty much shot himself in the foot for the job when he started talking about he had a philosophical objection to using this education coordinator job to promote the advertising BPA. But, counsel, we're not here about Mr. Johns, though. The issue is whether or not Ms. Robinson has raised the material question of fact regarding the pretext. We're at the pretext prong of the rubric. And I have some concerns about it's my view that if the process is not followed correctly, that calls into question the outcome. And one of the things that gives me pause is the fact that the successful applicant was placed into the position for longer than the 120 days that is set forth in the governing regulations. And also the fact that the people who were making the decisions skipped over the employee's immediate supervisor and went back several layers to the supervisor who had, in fact, testified against her at the previous trial. That raises questions in my mind regarding the objectivity of the whole process. And I would like to address that, Your Honor. And that is in terms of skipping back. In fact, Renee Ferreira was listed on the plaintiff's application as not her current supervisor but her past immediate supervisor. Wouldn't she have to do that? If you're filling out an application, wouldn't you have to list all your supervisors? So that's not an indication that that was someone she preferred to be her reference, was it? I can appreciate that. But what's important to note is that it wasn't way in the past. Was her current supervisor listed? I believe he was. So what would be the explanation for interviewing the supervisor who testified against her previously and not interviewing the current supervisor? Karen Hunt swore in her affidavit that her reason was that she did not know Lynn Marzette. She knew Renee Ferreira. She thought Renee Ferreira was a truthful person who would give her an honest opinion. And so the basis for that was the selected supervisor only wanted to get references from people she knew? I think she said out that she made the choice to call somebody. She saw a name of somebody that she knew and trusted. Isn't that enough to raise a material issue of fact regarding pretext? I do not believe it is, Your Honor, because the plaintiff has not come forward with any evidence that shows that there is any nefarious reason for doing that. This is going to be very unusual for a selected supervisor to come out and say, I'm not giving you a chance because you're African-American. That doesn't happen very often anymore. And that's why we have to look to the circumstantial evidence to see if everything is on the up and up. If the regulations are skirted or things are done out of the ordinary, that's the circumstantial evidence that raises an issue of fact in my mind. May I respond? Your Honor, I very much appreciate what you're saying. Of course, we're going to settle a case where a supervisor says, you know, I discriminated. That's never going to get to this place. And so, of course, we have to look at what the evidence is. Well, your point was that the plaintiff hadn't brought out any specific evidence, and my point to you was that generally is not going to happen. Not rarely do we see a smoking gun. Right. But here we haven't. I mean, the test is, is there any kind of substantial evidence here, or is it enough for Ms. Robinson to come in and say they're all lying? And I would submit, Your Honor, that it's not enough for the appellant to come in and say they're all lying. I get to have a call. It would help us a little if we had the source documents so we could see whether or not the ratings that were done were consistent with the source documents that were being used. Things like that. Certainly. Kind of raise an issue of whether or not the process was completely followed. Your Honor, I appreciate that. And I only have to say in my defense, I gave you as much as I could give you, and it's in all the supplemental effort, and we didn't have the burden here. What do you have to say about this sort of a head start that the Evans woman had by being in the job and having an opportunity to produce a pretty good track record so that when it comes before this board of selectors, they tie her with one other person for first place. Now, they say, well, she's been here and she's done the job. A couple of comments about that, Your Honor. The first is, you know, she did it for 120 days, then she stopped getting the money for it. Somebody had to do the work. She got another 200 days in the job. I don't think the record shows that. Whatever it was, another 180 or so. The other thing I want to point to is, if you look at the three, there were two groups. There was the three people, the three technical people, and then the selecting official and another person did the interviews. Of the three technical people, two said, we like Evans. One said, no, my first candidate is Kyra Chatfield. It didn't matter that the person had been in the job. When you get to the two people, you have Ms. Hunt and Joan McNamara. Joan McNamara said, I like Chatfield. It didn't matter to her that Hunt Evans had been in the job. And the other piece of it is also if you look at the three people who were on the technical group, they all said, you know, it was nice that she was in the job, but there were so many other reasons why we put her in our top two candidates. And is it a perfect world? No. Is it evidence of racism and discrimination? No, it is not that either, Your Honor. Do you have a question? No. Thank you, counsel. We'll give you one minute for rebuttal. Thank you. Your Honor, with regard to statistical evidence of the affirmative action plan and the judge's question concerning how many GS-13s are there, I would direct your attention to the supplemental excerpt of the record, pages 255, 265, and 266. And I do so for this purpose. It shows that only 1% of the employment population in GS-12 and 13 are black women. Two, the affirmative action plan itself categorizes black women as being in a manifest imbalance. These are federal merit system terms of art in the category of GS-12 and 13. And the selecting official was informed by the EEO officer at the time of the selection of this manifest imbalance. All right. Thank you, counsel. You have exceeded your time. Thank you. The case just argued has been submitted. The next case on calendar, Dorea v. Ashcroft, has been submitted on the brief as a succeeding case, Truncutt v. Ashcroft. The final case on calendar for argument is Puparello v. Ashcroft. Thank you.
judges: Goodwin, Alarcon, Rawlinson